## GERAGHTY et al. v. RANDALS et al.
### No. 2868.

Court of Civil Appeals of Texas. Waco.
Oct. 27, 1949.

Rehearing Denied Nov. 23, 1949.

328

Allen & Allen, H. B. Gordon, Hamilton, for appellants.

Joseph A. Chandler, Stephenville, P.M. Rice, Hamilton, for appellees.

LESTER, Chief Justice.

This suit was brought by the appellees below for the construction of the wills of their deceased father and mother, in which they prayed for a declaratory judgment to the effect that the wills of their deceased parents gave them, as independent executors of said estates, the power to sell certain land without an order of court and apply the proceeds realized therefrom, together with the cash on hand or a sufficient amount thereof, in reimbursing themselves for certain expenditures made by them to and on behalf of their mother and father during their lifetime.

In September, 1925, Mr. and Mrs. Ben and Sallie Randals, husband and wife, executed their joint wills, in which they provided:

"(1) It is our desire that on the death of either of us, all of the just debts then owing by such deceased, including the expenses of last sickness and funeral expenses, shall be fully paid.

"(2) That on the death of either of us all of his or her estate, both real, personal and mixed, separate as well as community, we, each for himself, give, devise and bequeath to the survivor of us in fee simple title forever, with full power to sell and convey without accounting to anyone in any manner for the proceeds thereof."

In the third paragraph they nominate one of their sons, Ellis H. Randals, as independent executor, and appointed two other sons, T. A. Randals and Lusk Randals, as advisers to and with said executor above named and provide that all be consulted before any deal is made or property sold. In the fourth paragraph they provided: "After the funeral expenses of both parties hereto are paid, we request that all the remaining effects shall be expended in repaying our sons, our executor E. H. Randals and his advisers, T. A. Randals and Lusk Randals, for necessities of life, many of its luxuries, our clothing and sums of money advanced to us by them at various times, and we request that the above named sons make an account that will fully cover these expenditures and we request that these accounts will not be questioned as to their validity; and that they file them among the papers in the bank and we request that our other children be fully notified of the existence of these accounts and that they be requested to investigate them for their own gratification. After these debts are paid we request that, should there be a residue, it go to our daughter, Miss Josephine Randals."

Mrs. Randals died in November 1925, and on August 4, 1926, the instrument was admitted to probate as her last will and testament and said judgment of the probate court has never been questioned by anyone.

On June 22, 1927, Mr. Randals executed another will, in which he stated: "After careful consideration having arrived at the conclusion that the former will heretofore made by myself and my wife, Sallie Randals, now deceased, did not make a distribution of our surplus estate altogether fair to our children in as much as same merely provided for repayment to our sons of sums advanced to us, and gave the remainder to our daughter, Josephine Randals, and whereas the said Josephine Randals owns property in her own name in a substantial amount; and whereas she, as well as myself and my wife during her lifetime, were the beneficiaries of our sons' generosity, and in view of all the facts I deem it but just and proper that I make a new and different will."

In the first paragraph of said will it is provided: "I direct that all of my just debts and funeral expenses be paid by my executors hereinafter named as soon after my death as can conveniently be done."

Said will further provided:

"(2) After the payment of the above, I then direct that my sons be repaid in full for all gifts of goods and money heretofore made to myself, my deceased wife and our daughter, Josephine Randals, and for all gifts which may hereafter be made to myself or the said Josephine Randals by them up to the time of my death."

"(3) After the payment and repayment of all the above sums should there remain any property belonging to my estate, real, personal or mixed, separate or community, I give and devise the same in nine equal portions to the nine children of myself and my wife."

In the fourth and fifth paragraphs he appointed his sons, E. R., T. A. and Lusk Randals, as joint independent executors.

Mr. Randals died in January, 1930, and on November 23, 1930, the will which was executed on June 22, 1927, was admitted to probate, and said judgment has never been questioned by any one. In the inventory filed in the estate of Mr. Ben Randals on November 25, 1930, and approved by the court, the plaintiffs listed their claim against his estate in the amount of $3,233.58. The trial court construed the wills as giving the executors the power to sell and pass title to the real estate without the authorization of any court order, and provided that they apply the sum so realized from said sale and the funds in their hands as executors, so far as necessary, to pay to themselves said amount of $3,233.58, with interest at the rate of six per cent per annum from January 14, 1930, the date of

330

the death of their father. The trial court held that plaintiffs' claim was a debt existing at the time of the death of their father.

We will discuss the points raised by appellants somewhat in a reverse order. We will first discuss the question of whether the amount involved represents a testamentary gift, as contended by appellants, or a debt that existed at the date of the deaths of their parents, as contended by the appellees.

The joint wills executed by the parents provide, first that after the death of either of them that all of the just debts then owing by such deceased, including the expenses of last sickness and funeral expenses, shall be fully paid; and fourth, they provide that after the funeral expenses of both parties are paid, "that all the remaining effects shall be expended in repaying our sons for necessities of life, many of its luxuries, our clothing and sums of money advanced to us by them at various times." In the last will executed by Mr. Randals it is first provided that all of his just debts and funeral expenses be paid by his executors; and second, it provides that after the payment of the above, then "I direct that my sons be repaid in full for all gifts of goods and money heretofore made to myself, my deceased wife and our daughter, Josephine Randals, and for all gifts which may hereafter be made to myself or the said Josephine Randals by them up to the time of my death."

■ We are of the opinion that it was not the intention of either parent to acknowledge such contributions as a debt, in the legal sense as that term is used, nor that they considered them as such, but the provisions of said wills do reflect that they did appreciate the noble and generous conduct upon the part of their sons in providing them with the necessities and luxuries of life, and after their just debts were paid, if any part of their estate remained they wanted them reimbursed. There is no evidence that the sons considered such contributions at the time they were made as a debt against their parents, or that they made them for any purpose other than because of the love and respect they had

for their parents so they could enjoy the usual and necessary comforts of life. Construing each will as a whole to determine the real intention of the testator, they reflect great appreciation upon the part of the parents for their sons' love and kindness in helping them through all those years, and if anything was left of their estate after paying their debts they wanted their sons to be reimbursed for what they had so generously contributed to them before their other children should receive any of their estate, and intended to make a testamentary gift to them for the amount so contributed.

■ Appellants' contention that the trial court was in error in holding that the executors had the power to sell and pass title to the land in question for the purpose of paying their legacy, in that the county court had exclusive jurisdiction in the matter for the purpose of making distribution of the estate, must be overruled. Both wills clearly reflect the intention that the testamentary gift to their sons should be a charge against all of their estate, both personal and real, and after the payment of their just debts and funeral expenses, it was their intention that if any of their property remained that the gift to their sons should have priority in payment before the residuary beneficiaries should recieve any part of the same, and that the same should be paid out of any property owned by them, including the land in question. If there should be any doubt about the intention of either one of them as expressed in said wills, which we do not concede, then we look to the circumstances surrounding the parties when the wills were executed. Their personal property was of very little value and the only income they had for several years was the rental from the 207 acres of land, which was very small, and the contributions made to them by their sons, which had relieved them from fear of want for the necessities of life, and they intended that their sons should be reimbursed out of any or all of their estate before the residuary beneficiaries received any part thereof. They could not have contemplated that their personal property would be sufficient to pay their debts, if

any, and the funeral expenses and then be sufficient to pay the testamentary gift left to their sons. Thus, having made the testamentary gift a charge against the land, the executors have the power to sell the land, or so much thereof that is necessary in order to pay the same. Haldeman et al. v. Openheimer et al., 103 Tex. 275, 126 S.W. 566; Moerlein v. Heyer, 100 Tex. 245, 97 S.W. 1040; Maibaum et al. v. Union Trust Co. et al., Tex.Civ.App., 291 S.W. 924 (writ ref.); Long v. Long et al., Tex. Civ.App., 169 S.W.2d 763 (writ ref.); Smith v. Cairns, 92 Tex. 667, 51 S.W. 498.

Appellants' third point is: "The error of the trial court in rendering judgment declaring the executors were empowered to pay themselves 6 per cent interest from January 14, 1930, on a testamentary gift in lieu of a debt, they having elected to take under the will." Unless prohibited by the terms of the will or by statute, it is a general rule that pecuniary legacies bear interest from the time they are due and payable. Interest is not imposed on the executor or trustee as a penalty for his default or neglect; nor is the right to receive it affected by delay in the administration or by suit or contest to construe the will. It is awarded purely as an incident of or accretion to the legacy itself as compensation for loss the beneficiary suffered by reason of the delay. Williams v. Smith, Tex., 206 S.W.2d 208; State Bank of Chicago v. Gross, 344 Ill. 512, 176 N.E. 739, 75 A.L.R. 172; Esmond v. Brown, 18 R.I. 48, 25 A. 652; Woodward's Estate v. Holton, 78 Vt. 254, 62 A. 718, 6 Ann. Cas. 524; Kem. v. Dunham, 106 Mass. 586; Davison v. Rake, 44 N.J.Eq. 506, 16 A. 227; Claflin v. Holmes, 202 Mass. 157, 88 N.E. 664; In re Brandon's Estate, 164 Wis. 387, 160 N.E. 177; O'Leary v. Smock, 95 N.J.Eq. 276, 119 A. 23, 122 A. 927; 69 C.J. 1260, Sec. 2642; 28 R.C.L. 353, Sec. 333. Neither of the wills in question nor the statutes of this state prohibit the payment of interest on the pecuniary legacy given to the appellees. Under the terms of each will the legacy was not to be paid until after their just debts and funeral expenses were paid, at which time the legacy became due and payable, but the executors were unable to pay themselves by reason of the fact that there were insufficient funds to pay, and in this connection the court made the following finding: That the executors (appellees herein) "have since the death of their father, carefully and prudently handled and managed the estate left at the death of their father, Ben Randals, and they have paid the funeral expenses and the other just debts and expenses as directed by the wills of Sallie Randals and Ben Randals, except as to the sum of $3,233.58. That there have been no funds with which to pay E. H. Randals, T. A. Randals and Lusk Randals this aggregate sum advanced by them to their father and to their mother * * * and that their has been no market value for the sale of the 207 acres of land in Callahan County, Texas, until about the time this suit was filed."

We are of the opinion that the appellees are entitled to six per cent interest from the time the debts and funeral expenses were paid, but the record does not reflect the exact dates when same were paid but it does show they were paid sometime during the year 1931, at which time said interest began to accrue, and not from January 14th, the date of the death of Mr. Randals.

Appellants also contend that the judgment is excessive in that the undisputed evidence showed that the executors had been settled with as individuals and had been reimbursed by five of the residuary beneficiaries and their descendants.

The evidence shows that from August, 1947, to April, 1948, the three executors, as individuals and not in their representative capacity, acquired from five of the residuary beneficiaries or their descendants, by warranty deeds, their undivided interest in the 207 acres, paying a cash consideration to each one for his or her interest, and each deed provided: "For the same consideration we hereby release the grantees herein from all demands and claims as Independent Executors of the Estate of Ben Randals, deceased." An heir has a right to convey his potential interest in an estate. The extent of such interest, if any, depends upon the outcome of the ad-

ministration of the estate. Tex.Jur., Vol. 15, pp. 178, 179, 180, secs. 30 and 31; Rutherford v. Stamper, 60 Tex. 447. In this case all of the property of the deceased mother and father was subject to the payment of debts and the special legacy to the sons. If any of the estate remains after discharging these obligations, the residuary beneficiaries would be entitled to their proportionate share, but if it takes the whole estate to pay such obligations, then they would receive nothing. The executors have paid all the debts and the only obligations now outstanding is the claim of appellees, and the only property now existing is the 207 acres and about $500 in cash. The whole 207 acres is now, just as it has been since the death of their father, subject to the payment of the claim of the appellees, which they are now attempting to sell—not just the potential interest of the appellants but the whole 207 acres—and apply the proceeds in payment of their claim. The appellees, since the purchase from some of the other heirs, now have a potential interest in the residue of the estate to the extent of $59/70$ and the appellants have $11/70$ potential interest therein. After the payment of such claim, if any money is left then that remaining will be divided among all the residuary beneficiaries according to their respective interests. This would be true regardless of who purchased the undivided potential interest of said heirs, whether it was the appellees or some stranger to the estate. Appellants did not pay any part of the consideration, they were not parties to the transaction in any manner, and we cannot see where their rights have been in any way prejudiced.

Being of the opinion that appellees should be classed as legatees under the terms of the wills of their parents, and the sum of $3,233.58, as found by the trial court to be the amount of the contributions made to their parents, should bear interest at the rate of six per cent per annum from the date of the payment of the funeral expenses of their father, and not from January 14, 1930, the judgment is hereby reformed in this respect, and in all other particulars it is hereby affirmed.